Good morning, Your Honor. May it please the Court, I'm Alfred Robertson. I'm arguing on behalf of Reynaldo Salgado-Sosa. The Washington Nationals moved to the D.C. area, and that's when I really first started paying attention to baseball. I hadn't really played it as a kid. I grew up in the D.C. area. There was no big baseball team. I played football, I didn't play baseball. One thing that watching the Nationals has taught me is an appreciation for the strike zone. And I'd like to say that judges call balls and strikes, balls and strikes is what they're called. Here, in these cases, when you're talking about family connections to asylum cases, the strike zone is all over the place. This Court has told the BIA and immigration judges, your strike zone is too small. You need a bigger strike zone. And yet, they still haven't changed it. Now, maybe this case was decided before some of the other cases that the Court has really taken the BIA to task on, and they didn't have the Court's approval. This case really focuses on at least one reason for my client's persecution in Honduras, was his family membership and relying heavily on the Crespin case, which I'm sure, Judge Gregory, you're well familiar with. You were one of the judges that was on the panel for that case. Well, did you argue that in your brief? I mean, the question would be, is there anything anywhere in the record or your brief where you argue that Sal got a social face persecution based on his family membership in general, or based on being a family member to someone who refused to pay the war tax? Did you tell? I did argue it in my brief, Your Honor, that it was both because he was a victim of crime and a family member of a witness of crime, and that that was a reason for his persecution. Well, what persecution did he face by the MS-13 since he and his father testified? They were shot at? His car wasn't off the road? Since they testified. Well, yes, Your Honor. Remember, there were two attacks. There was one attack in 2002. That was the first attack, where Mr. Salgado Sosa hit the guy with the television set with a piece of wood. Then they reported that crime. The father, his stepfather, was shot twice and punched four times. I think I misstated it in my brief when I was going back and looking at the record in preparation for today. I reread the administrative record in his testimony. There was a later attack after that. After they had gone to the police and after they identified people, they came to the house. This time, my client and his family knew they were coming, and there was a shootout, essentially, that happened. Then they moved, and then they went to another location in Honduras, where they stayed for a while. They heard there were more threats. They left that location in order to protect the stepfather's parents, who they were living with, because they didn't want the gangs coming there to come after them. They moved again after that. Then my client was working for Hertz. He was run off the road. No, he didn't say, and he doesn't know, that that was part of the persecution, that that may have just been an accident. But in light of everything else, he certainly, while he admits it may have been an accident, he's still very concerned about it, that that was something else that was added to this. Yes, they were looking for him. After he leaves, there's not as many threats, because they're not looking for him. He was the one, not only because he hit the guy with a piece of wood, which is what they were saying, but also because he identified people in the police station, and there was testimony in court. In the administrative record, there are two different court preliminary, court hearing paperwork that you can kind of see that were translated for the immigration court. The Crespin case was mentioned during the hearing. The immigration judge actually cited to the Crespin case when she was making her decision in this case. I think that Crespin changed the picture for him. I think that made him eligible to apply for asylum, that his social group was more defined, and that made it better. And I think, like I argued in my brief, and I argue here, that that makes that not looking at his particular social group, not looking at his failure to file within one year in light of Crespin, is a constitutional question of law. The court did not follow the law. And I think that denied him equal protection of the law, and that denied him due process of law, and that makes this a constitutional question as to expose why his late filing was acceptable and why this court has jurisdiction to review it. If I'm remembering right, and please tell me if I'm wrong, I thought that the BIA held that although you did argue Crespin, or I'm sorry, the petitioner argued Crespin sort of on the merits before the IJ. Look, family ties, I'm in. Did not make this argument before the IJ that Crespin constituted sort of a change in circumstances that would excuse the late filing. Is that right? I don't disagree with the BIA's conclusion in that, but I do think that the court in applying the law should have applied that when they were looking for the different things. That the attorney that argued the case to the immigration judge didn't say, I think he's late filing is excused because Crespin defines his new social group. Because he didn't say the magic words. I'm never going to judge. I don't know where that comes from, where the litigant's responsibility is to point out every single factor of law that should apply, and how the judge should measure that. Well, I think it's more than just when the judge says, what are your changed circumstances? You're supposed to say something other than, well, things have changed in Honduras. Yes, is probably what the most effective part is. Be that as it may, my client is still a judge. He qualifies for withholding. He's certainly met the burden for withholding. He showed past prosecution. He showed it on a protected ground. And the judge kind of played the short shrift to that argument. Can I ask you a question about this? So just assuming hypothetically that there had been a legal error in determining that the petitioner hadn't met this nexus requirement, would we have to remand for a determination as to whether there's a clear probability of future prosecution? Your Honor, I think in the normal course of these cases is that these cases are always remanded. And I think that's the proper way to go back, to have the case remanded. The case for withholding wouldn't be over. There's still more to be found. Yes, there would still be more to be found in withholding. I think, however, when it comes to future persecution, that this is not a case where it's only future persecution he's claiming. He's claiming past persecution. And that changes the regulations in the case law, change how the burden then shifts to the government. And the government has to prove that he won't be persecuted. That's what would happen here. What happened here was that the court said, there's no nexus, so we're not looking at it. Right. I'm just saying the findings are not complete as of now for the withholding. That's correct. I'm reminded of another case when I was listening today and I'm looking at this case and I'm thinking about this case and I thought about Kamara v. Ashcroft. I wish I had the site. I don't remember the site off the top of my head. Obviously, it's v. Ashcroft, so it was before 2008. That was an FGM case, a very brutal case for the government. For the alien in that case. The alien in that case was found by the immigration judge to have lied. And even though the alien was found not to be credible, and that's not the case here, by the way. My client was found credible. So were his witnesses. The Fourth Circuit, this court, granted the petition for review and remanded the case and basically said, look, the documentary evidence was enough to carry the debt, despite the incredibility finding of Ms. Kamara. And I think that's also true here. Thomas Warman's affidavit, and I point to administrative record page 364 is what I'm thinking of, where he talks about the intimidation of witnesses. Where Thomas Warman's affidavit was pretty detailed in the types of persecution that he suffered and the types of persecution he would suffer if he was forced to return to Honduras. It doesn't so much talk about nexus, but it did talk a lot about those issues that I think are pretty important. And again, I'm not sure the immigration court paid a lot of attention to it. I think the immigration court made the conclusion early that there's no nexus. So they really didn't get into much of the other stuff that they needed to get into to make a full decision in this case. Your Honor, I think this court's, the BIA even has said in different types that their strike zone is so wiggly. It's the only way I could, fantastic legal term, wiggly. The strike, it is so hard to find the case and be able to predict what the court is going to do. When you're looking at a case when this court repeatedly has to tell the BIA and immigration judges, your strike zone is too small. That's what's happened here. Mr. Salgado Sosa fits into the particular social group of families, families of victims of war. There was a lot of stuff that was ignored in this case when the court found that there was no nexus. And that finding just permeates and destroys any chance that he has a case when they just don't find a nexus. In this case, he certainly proved there was a nexus. He carried his burden. And this petition for review should be granted and this case needs to be sent back so that he can prevail on at least his withholding claim. I don't want to give up the asylum. I don't want to give up his one-year asylum claim. I know the case law and the statutes against him on it. But I do think that there was a constitutional claim because of the change not only in Honduras and the coup in 2009, but also the 2011 decision by this court in Crespen that opened up this particular social group that should have been  a nexus. Mr. Norwood. May it please the court. My name is Anthony Norwood for the United States today. I will also be brief. Our petitioner's counsel was brief and I will be brief. I don't quite understand the baseball analogy. Sorry that Dusty has left town. But the issue in this case, based on what the petitioner just argued, is does the record compel the conclusion that Salgado Sosa will face a clear probability of persecution on a case on account of his membership in his family should he return to Honduras? That would be the issue that would be before the court, whether the court would reverse the immigration judge's finding, which he makes on page 126, echoing, that family and being a witness was not a cause of the threat. The idea also made as a specific factual finding that the reason petitioner was being persecuted, that a central reason was because his father wouldn't pay this war tax or whatever it's called, together with what we know the law to be, seems to follow from that that he actually prevails on this nexus thing. I agree that there hasn't been a finding about the threat of future persecution, but how does, when you put together, I'm losing my memory, but he finds that the two central reasons, right, are that the father didn't pay the tax and that the whole family was being persecuted or targeted because of the family's resistance. I would think on either of those factual findings, when you put it together with Crespin, he prevails. We would argue, and we argued in our brief, that war tax as economic... But that's why the father is being persecuted or targeted, but the petitioner is being targeted because his father won't pay the tax. How is that not being... We do argue that the son is being persecuted because the family won't pay the war tax, and because the son hit somebody over the head with a stick and also... That's fine. The IJ didn't say that. The IJ said because of the father. The IJ made the specific factual finding that it was one central reason is because the father won't pay the tax. So why isn't that enough? The central reasons are one, petitioner's father refused to pay extortion, and two, revenge on the family. Because refusing to pay extortion is not persecution on account of... Right. So that's why the father can't make a withholding case, but the son can because it's happening to him because of what his father did. That's what we said in Crespin. It's what we clarified after Crespin in that whole line of cases, the names of which are escaping me, Cordova and Villa Toro. This is exactly what we keep having to say in case after case, that the agency is reading clearly. It doesn't matter whether the father is being targeted for some reason. That's covered. What matters for purposes of this case is that the son is being targeted because of what his father did. We would argue that the evidence doesn't compel. That's what the son is... But the IJ said it. So you're saying the IJ's holding was wrong. The IJ said a central reason for the persecution is that petitioner's father refused to pay extortion. You think that is wrong and contradicted by the record? You want us to do that? No, I don't think that's wrong, Your Honor. I think that is the sole reason that this whole family is being persecuted is refusal to pay a ward. I just... The IJ made the finding. When you put the finding next to the law, the petitioner should prevail. Appreciate it. You said you disagree, but isn't it correct that because he's the son, his son, that's why, for example, he's at home when they come looking for his father, correct? He's at home when they rob the family. Yeah, but because that's his father. That's why he's at home. That's why they're in the same place. Well, that's why his father's at home. That's also why his mother's at home. That's why the family... You may be taking them off, but you're just adding on to, I think, the strength of the whole point is family's at home. That's why it's a family protection. Yeah. Your Honor, what the immigration judge and the board are finding is that it was not a protected basis that they were being threatened in Honduras. I think the clearest point that I could make about the facts of this case and the nexus and the threat is that the father remains in Honduras, that the father is at home in Honduras. He was threatened. He was the lead person being threatened. He was the one who owned the television. He was the one who owned the jewels. He testifies as a witness before the immigration judge, but he had stayed home safely and it was obvious or it appeared that he was going to return to Honduras. He did  make a remand for why there is not a clear probability of future persecution. I don't see what that has to do with the nexus requirement, which is what the IJ and the BIA relied on. I believe that it's a strong indication of what their fear is and what the probability of future persecution is for everybody in the family. For example, you think that if the father got involved in a gang, willingly, was involved in a gang and no protection for him, but he somehow made them very angry. If they came after him, you would say, oh no, they're after him because of his default, because of his involuntary association with the gang, not protected. But if they do that and connect his son to it, his son somehow is not protected because they're doing it for the father's reason and may not be protected, but it isn't because that's his father. We're going after the whole family now. Why would that not be a nexus for protection as a family member in terms of protecting the group as the Fourth Circuit has recognized? In some cases, Your Honor, as you admit, it has been found that way. I would submit to you that that hypothetical is not the case. Well, why not here? What's the difference? Because there wasn't a voluntary membership in a gang. There wasn't a tattoo on the father. That's even better. It's robbery. It's extortion. It's robbery of the whole family. But the principle of this whole line of cases is that it doesn't matter what the reason is for going after the family member, whether it was because the family member testified, that's not protected, or because the family member resisted the gangs or whatever. Whatever unprotected reason makes the gang go after the family member, that's not the question. The question is, when they come for that person's whole family, are they going after the rest of the family because of what the first family member did? I've said this so inelegantly, but you know what I mean. And I just feel like that through line is really 100 percent clear in our cases now. We've tried to explain this several times. Well, I'm not sure that that line is exactly clear, that asylum would protect a family member whose whole family is being robbed. I don't think that's the purpose of the asylum law. I don't think that's the protection here. I don't think there's a clear probability that he's going to be threatened. Yeah, but that's not the fact of this case, though. You're talking about a case where someone robs the family contemporaneously with no precursor. That's what you're talking about. You come in, okay, the family's at home. I robbed them all at the same time. That's different. Here, it's because of his refusal to pay extortion was what generates the animus against him. And then they come because of that animus to him, the father, and the family's involved because they're family members. But it's got to be assumed, I would think, that it's because he refuses to pay the extortion too. He's not going to pay the extortion. Well, I'm having a problem with this record, and I still, I think the petitioner only argued it was because they testified, not for any other reason. Show me in the record where I would submit to you that I believe you're correct, Your Honor, that he argued mostly or that it was, that he testified. And he put into the record the testimony, not simply as a family membership. And as he pointed out, Crespin, the- I mean, you say in your brief that he argued Crespin on the merits before the IJ, right? On the merits, that it led to- Right, and I thought his argument, I agree with you, I thought his argument was at least mostly, if not exclusively, that he was persecuted on account of familial ties under Crespin and that the reason his father was being targeted was not the war tax, it was because of the testimony. But I don't see how that changes the underlying, you know, family ties argument. He did argue that he was being persecuted for family ties under Crespin, right? He argued that he was being persecuted for family ties, and the immigration judge said that was not a reason. Right, because the immigration judge thought that the father had to be being persecuted for family ties- I think it was the immigration judge thought that the immigration judge thought that theft or extortion was the sole purpose for the- For the father, for the persecution of the father. No, because we know that because the IJ said, and I'm quoting, the central reason was because the petitioner's father wouldn't pay the war tax. That's not why he stood. I appreciate that. Sorry, to let it go, sorry. But I also would agree with your point early on that the BIA found that changed circumstances for the untimeliness of the asylum claim was not presented, that that part of Crespin was not presented to the immigration judge. So that was not legally decided. If there are no further questions, I'll rise to- Thank you, Mr. Norworth. Mr. Robertson, do you have a few minutes? I'm not sure that there is much more for me to say, even in rebuttal to the government's issues, and I think I, my mother didn't raise any stupid children. Thank you very much for the opportunity to argue. If there's any other questions, I'll be happy to answer. Is there none? Thank you so much. Thank you. I'm going to ask the clerk to adjourn the court for the day, and then we'll come down and re-counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, Henry F. Floyd, Pamela A. Harris